**STATE of Missouri, Respondent,**

v.

**Charles MATNEY, Jr., Defendant-Appellant.**

**No. 51063.**

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 12, 1986.

Motion for Rehearing and/or Transfer Denied Dec. 10, 1986.

Application to Transfer Denied Jan. 13, 1987.

Charles E. Bridges, St. Charles, for defendant-appellant.

William L. Webster, Atty. Gen., Paul LaRose, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant, Charles Matney, Jr., appeals from a judgment entered on a jury verdict which found him guilty of three counts of Burglary in the Second Degree and three counts of Stealing. Defendant was found to be a persistent offender and sentenced to seven years imprisonment on each of the six counts with the sentences to run consecutively. We affirm.

In late November and early December of 1982 several business establishments in the Old Towne area of St. Charles were burglarized. Various tools and office equipment were taken. No fingerprints were found at the scene and none of the property was ever recovered. Detective Ed Janke of the St. Peters police department was assigned to investigate the burglaries. He interviewed a suspect, Gerald Ell, in November of 1983. According to Janke's testimony, Ell implicated defendant. The police, however, took no action against defendant. Almost ten months later, defendant, upon learning that he was a suspect, went to the police station to talk with Janke. He was there interviewed by both Janke and another detective, Vince Cowdry. Defendant was placed under arrest and read his *Miranda* rights. Both Janke and Cowdry testified that defendant orally confessed to three of the burglaries and implicated Ell in two of them. After nearly five hours of questioning, defendant was released. Janke testified that defendant was released on the condition that he provide information regarding other burglaries in the area and that he failed to do so. Defendant was again arrested.

Prior to trial, defendant filed a motion to suppress the confession. Evidence adduced at the hearing showed that defendant had retained a lawyer prior to speaking with Janke. The evidence further showed that defendant's lawyer phoned the St. Pe-

ters police department in an attempt to see his client but was erroneously told that defendant was not at the station. The trial court granted the motion to suppress but upon a subsequent motion by the prosecutor, reconsidered its ruling in light of *State v. Beck*, 687 S.W.2d 155 (Mo. banc 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986), and reversed its decision.

Defendant's copious brief contains sixteen points of error which can be consolidated into three points. All points allege plain error by the trial court in not declaring a mistrial *sua sponte*. First, defendant sets out eleven statements made during testimony and closing argument and contends that these statements, as well their "combined effect," constitute inadmissible hearsay. Second, defendant sets out three statements made during the trial and contends that these statements are irrelevant, immaterial, and prejudicial. Third, defendant contends the trial court erred in admitting evidence of his confession.

█ Defendant's trial counsel did not object to the statements at trial or file a motion for a new trial as required by Rule 29.11(d). He has, therefore, failed to preserve any allegations of error for appellate review. *State v. Adcox*, 693 S.W.2d 111, 112 (Mo.App.1985). This court may, however, review in its discretion for plain error when it finds that "manifest injustice or a miscarriage of justice has resulted." Rule 29.12(b). The defendant carries the burden of showing that manifest injustice will result. *State v. Groves*, 646 S.W.2d 82, 83 (Mo. banc 1983). The plain error rule is not to be routinely invoked and is limited to circumstances in which there is a strong, clear showing of manifest injustice. *State v. Jordan*, 627 S.W.2d 290, 292–93 (Mo. banc 1982).

Plain error and prejudicial error are not synonymous terms. No precise method exists for determining plain error but it can be said that plain error includes prejudicial error which so substantially affects the rights of the accused that a "manifest injustice or miscarriage of justice inexorably results if left uncorrected."

*State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983).

█ The conviction was supported by substantial and overwhelming evidence. Testimony established that defendant made a detailed confession of the burglaries which included a factually correct account of how he and his accomplices gained access to the business, how the ransacking occurred, and which items were stolen. These accounts matched the testimony given by the victims. There was also testimony that defendant hit himself on the forehead while burglarizing a safe at one of the businesses and that defendant still had a mark on his forehead at the time the confession was given. Detective Janke also testified that the same method was used in all three burglaries and that defendant and Ell lived within walking distance of the three businesses. Additionally, a witness testified that he had received threats from defendant warning the witness that his life would be in jeopardy if he testified.

Upon review of all the evidence, with due consideration given the limited scope of review, we find the first two points to be without merit. *See State v. Murphy*, 592 S.W.2d 727 (Mo. banc 1980); *State v. Smith*, 603 S.W.2d 78 (Mo.App.1980); *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). No precedential value would be served by an extended discussion of these first two points. They are denied in compliance with Rule 30.25.

█ Because this court will, no doubt, be called upon to examine and distinguish *Beck* and because defendant's confession is a significant piece of evidence in this case, we will consider defendant's third point, that his confession was erroneously admitted into evidence, under plain error review. When a pretrial motion to suppress is filed and overruled, the defendant must, in order to preserve the issue, make a specific objection to the items when they are offered into evidence at trial. *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974). We are,

thus, compelled to review under the limited scope of plain error review because the defendant failed to object at trial to the introduction of the confession and also failed to file a motion for a new trial.

Defendant contends that the conduct of the police deprived him of due process when they held him without a warrant and refused to permit him to consult with his lawyer.

On November 30, 1983, defendant, upon learning that he was a suspect in the Old Towne burglaries, went to the St. Peters police station at about 1:00 p.m. to talk with Detective Janke. Defendant was arrested and read his *Miranda* rights. He signed a waiver form and made the alleged confession.

Ron Brockmeyer was the defendant's lawyer at this time. Brockmeyer testified at the suppression hearing to the following. He said he had been hired by defendant because defendant felt he was being harassed by the police department concerning these burglaries. On November 30, defendant's mother called Brockmeyer and told him that defendant had gone to the police station. Brockmeyer then called the station at about 1:00 p.m. and again at 1:15 p.m. and told the police that he was representing defendant. He was told defendant was not at the station. He went to court that afternoon and upon returning, called the station again at about 5:00 p.m. and spoke with Janke. He was told defendant was being questioned and that he could speak with defendant in thirty minutes. Janke testified that he did not speak with Brockmeyer or have any knowledge that a lawyer wanted to speak with defendant. The trial judge found that Brockmeyer represented defendant and that defendant was under arrest and in custody prior to the 1:15 p.m. call. The motion to suppress the confession was denied in light of *Beck*.

In *Beck*, the defendant fled the state after committing a double homicide. He phoned his mother in St. Louis and told her to get him a lawyer. She contacted a public defender who had been appointed to represent her son on pending but unrelated charges. The public defender contacted the sheriff and requested to be notified when the defendant was apprehended. The sheriff consulted the prosecutor and was told he did not have to comply with the request. A warrant was issued and the defendant was arrested at the Miami airport. The defendant was read his *Miranda* rights, signed a waiver, and responded affirmatively when asked if he wanted to make a statement. He was not told of his lawyer's request. The defendant made several statements after his arrest and during the flight back to St. Louis. In an attempt to suppress the statements, the defendant contended that the waiver was not knowing and intelligent because he was unaware of his lawyer's request. The court held that the failure to inform the defendant was not a sufficient basis for invalidating the waiver. The court, however, stated that "deceptive practices, collusion and other types of misconduct on the part of the police and other officials can and should serve as a basis for invalidating waivers obtained through the use of such practices." *Beck, supra* at 158. The court declined to characterize the sheriff's decision not to inform the defendant as deceitful.

The *Beck* court stated that the defendant's contention that the waiver was not knowing and intelligent is premised on the notion that information "not disclosed to him would have had a material bearing on his reasoning process had it been made known to him." *Beck, supra* at 159. Because the defendant had instructed his mother a few days earlier to find a lawyer for him, the court rejected the contention that the defendant's reasoning process would have been different had he been told of his lawyer's request. "It is simply incredulous to think that at the time of his arrest, defendant had forgotten that just a few days earlier he had specifically requested his mother to find him a lawyer." *Id.*

A similar result was reached in *Moran v. Burbine*, —— U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In *Moran*, a defendant

confessed to murder after he was read his *Miranda* rights and signed waivers. He was being represented by a public defender on an unrelated charge. The defendant did not request a lawyer but while in custody, his sister contacted the Public Defender's Office. She was not able to reach defendant's lawyer but another public defender phoned the police and informed them that she would act as defendant's legal counsel. The public defender was told the defendant would not be questioned further until the next day. Later that evening the defendant was interrogated and confessed. The Court rejected defendant's contention that the conduct of the police violated the Fifth and Fourteenth Amendments to the Constitution. As in *Beck*, however, the Court, in *Moran*, left open the possibility of a violation on facts "more egregious" that might rise to the level of a due process violation. "The challenged conduct falls short of the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran, supra* 106 S.Ct. at 1148.

■ The *Moran* decision was based on a rationale substantially similar to that of *Beck*. The contention that the defendant's waiver was not voluntary because he was not informed of his lawyer's attempts to contact him was rejected as the Court focused on the mental processes of the defendant. "Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Moran, supra* 106 S.Ct. at 1141. Only that conduct which deprives the defendant of knowledge essential to understanding the nature and consequences of the waiver of rights affects the validity of the waiver. *Id.* "Although highly inappropriate, even deliberate deception of an attorney could not possibly affect a suspect's decision to waive his *Miranda* rights unless he were at least aware of the incident." *Id.* The

court declined to adopt a rule requiring the police to inform a suspect of a lawyer's efforts.[1]

The facts as presented here are squarely within *Beck* and *Moran*. Defendant was arrested, read his *Miranda* rights, and signed a waiver form. Defendant was aware that he was represented by a lawyer but yet, at his confession, stated that he didn't want a lawyer. Defendant's lawyer attempted to contact defendant prior to questioning but was prevented from doing so by misleading statements from the police. Defendant was not told of his lawyer's attempt to contact him.

■ Defendant contends, however, that the police conduct in this case rises to the level of deception and egregiousness as contemplated by *Beck* and *Moran* so as to constitute a due process violation. He contends the police conduct violates a criminal statute and thus, is distinguishable from *Beck* and *Moran*.

The statutes cited by defendant are §§ 544.170, RSMo 1978 and 575.320.1(5)(b), RSMo 1978. Section 544.170 provides that "every such person [persons held without a warrant] shall, while so confined, be permitted at all reasonable hours during the day to consult with counsel or other person in his behalf ..." and that a failure to allow a defendant to do so is a misdemeanor. Section 575.320.1(5)(b) provides that a law enforcement officer commits the class A misdemeanor of Misconduct in the administration of justice if he violates § 544.-170 and "knowingly refus[es] to permit a person in custody to see and consult with counsel or other persons...."

Defendant contends that both of the statutes were violated because his lawyer was erroneously told the defendant was not at the police station and because his lawyer was later told he could not speak with defendant until after questioning. We find this contention to be without merit. Defendant construes the police conduct as denying defendant the right to consult with a

---

1. Both *Beck* and *Moran* rejected a Sixth Amendment challenge in ruling the confessions preceded the formal initiation of adversary judicial proceedings.

lawyer. Defendant, at no time, requested to speak with his or any other lawyer. It was the lawyer who was denied access to the defendant, not the defendant to the lawyer. While we certainly do not condone deceptive practices by law enforcement officials, we are not persuaded that the police conduct in this case differs significantly from that in *Beck* and *Moran* or that a statutory violation is present. Point denied.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.