STATE of Missouri, Respondent,

v.

Robert L. WADE, Appellant.

No. WD 47160.

Missouri Court of Appeals,
Western District.

Dec. 7, 1993.

Lorry L. Kohrs, Asst. Appellate Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

PER CURIAM.

Robert L. Wade was convicted by a jury of stealing firearms, a class C felony (section 570.030.3(3)(d), RSMo 1986.) Wade was sentenced as a "persistent offender" (section 558.016.3, RSMo Cum.Supp.1992) to a ten year term of imprisonment. Wade appeals his conviction and sentence.

Affirmed.

Wade raises three points on appeal. The main issue is whether the trial court plainly erred in overruling Wade's motion to suppress and allowing into evidence statements which Wade claims were obtained in violation of his constitutional rights not to incriminate himself. The necessary facts are as follows:

Wade filed a pretrial motion to suppress statements. At the suppression hearing, Deputy Bill Wright of the Daviess County, Missouri Sheriff's Department, testified that he went to the county jail in Lucas County, Iowa to interrogate Wade. Wade was being held there regarding a separate unrelated incident. Deputy Wright advised Wade of his Miranda rights and Wade signed a Miranda waiver.

Deputy Wright then asked Wade if he wanted to talk to him. Wade initially responded in the affirmative, but then replied, "Well, I think I don't want to say anymore. I think I should have an attorney." Wright testified that he responded, "that was fine,

that was his decision to make; however, that if he didn't want to talk to me that I was going to recommend to turn this over to the A.T.F. and an agent would contact him." Wade replied, "Well, I'll talk to you," and then confessed. Wright was walking away at the time. Wright also testified that he promised Wade that he would inform the prosecution of his cooperation. This was the only promise Wright made to Wade, and Wright intended to turn the case over to A.T.F. if Wade did not cooperate. The motion to suppress was denied.

At trial, the prosecution's evidence established that the guns were stolen from the victims' house. The prosecution's only evidence linking Wade to the crime was his confession. Wade's confession was introduced into evidence without objection. Wright's testimony at trial was essentially the same as it was at the suppression hearing.

### I.

In Wade's first point, he claims that the trial court plainly erred in admitting into evidence the statement he gave to Deputy Wright. Wade argues that the statement "was taken in violation of his right not to incriminate himself, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution." Specifically, Wade claims that Deputy Wright violated his constitutional rights by continuing to question him after Wade "unequivocally requested an attorney and invoked his right to remain silent."

█ In reviewing a ruling on a motion to suppress, an appellate court must view the facts and reasonable inferences from those facts in the light most favorable to the lower court's ruling and must disregard any contrary evidence or inferences. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo. banc 1982). We must affirm the trial court's ruling if we find the evidence sufficient to support the findings below.

█ When a pretrial motion to suppress is filed and overruled, the defendant must make a specific objection when the statement is offered into evidence at trial. *State v. Mat-*

*ney*, 721 S.W.2d 189, 191 (Mo.App.1986). Therefore, as Wade admits, we are compelled to review under the limited scope of plain error because he failed to object at trial to the introduction of the confession. *Id.* at 192.

The Fifth Amendment of the United States Constitution is applicable through the Fourteenth Amendment and protects a defendant against compulsory self-incrimination. *Edwards v. Arizona*, 451 U.S. 477, 481–82, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630–31, 16 L.Ed.2d 694 (1966). An accused who is in police custody is protected against compelled self-incrimination by the requirement that he be advised of his right to assert his right to counsel and to prevent or interrupt any interrogation until he has consulted with counsel or counsel is present. *Edwards*, 451 U.S. at 486, 101 S.Ct. at 1885; *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628.

█ The right to counsel jurisprudence now recognizes two categories of request, the unequivocal request and the equivocal or ambiguous request. *State v. Figgins*, 839 S.W.2d 630, 638 (Mo.App.1992). An unequivocal request for counsel mandates "the relatively rigid requirement that interrogation must cease." *Minnick v. Mississippi*, 498 U.S. 146, 151, 111 S.Ct. 486, 490, 112 L.Ed.2d 489 (1990). An equivocal or ambiguous request for counsel does not cut off interrogation. Questions may continue but only to clarify the ambiguity. *Figgins*, 839 S.W.2d at 638; *United States v. Fouche*, 833 F.2d 1284, 1287 (9th Cir.1987).

█ In Missouri our courts have not been faced with the question of whether "I think I should have an attorney" is an equivocal or unequivocal request for counsel. Some jurisdictions consider a request for counsel which is preceded by the words "I think," to be an equivocal request for counsel. *See Kyser v. State*, 533 So.2d 285 (Fla.1988); *State v. Moulds*, 105 Idaho 880, 673 P.2d 1074 (App. 1983). Others consider it to be an unequivocal request for counsel. *See Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir.1991); *Jones v. State*, 742 S.W.2d 398 (Tx.Crim.App.

1990); *People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (banc 1980); *Wentela v. State,* 95 Wis.2d 283, 290 N.W.2d 312 (1980). However, we need not decide this issue. Regardless of whether Wade's statement is considered to be an equivocal or unequivocal invocation of the right to counsel, the result would be the same.

■ First, we must address whether Deputy Wright's response to Wade's statement was "interrogation." "Interrogation" means that the "questioning is initiated by law enforcement officers after a person has been taken into custody." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. It not only includes express questioning but also its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). A functional equivalent of questioning is any statement or conduct which the police should know is "reasonably likely to elicit an [inculpatory or exculpatory] response from the suspect." *Id.* at 301, 100 S.Ct. at 1689–90. The "response from the suspect" refers to any statement or non-verbal act which might be used against the suspect in court. *Id.* It can be in the form of a denial, an admission, or any other inculpatory or exculpatory conduct.

Obviously, the first prong of the definition of "interrogation" was not satisfied because Wright did not expressly question Wade after he allegedly invoked the right to counsel. Moreover, it cannot be fairly concluded that Wade was subjected to the "functional equivalent" of questioning. In short, it cannot be said that Wright's statement was designed to elicit a response from Wade. Therefore, Wright's statement that he was going to turn the case over to A.T.F. was not an "interrogation" and questioning had ceased. In conclusion, regardless of whether Wade's expression of his desire to deal with Wright through counsel was equivocal or unequivocal, Wade was not subjected to further interrogation by the authorities before counsel was made available to him. Thus, when Wade stated, "I think I'll talk to you," he was not responding to interrogation in violation of his right to counsel, but had initiated further conversation with the police and waived his right to counsel.

■ If we were to assume that Wade unequivocally invoked the right to counsel, *Edwards* established that an accused's invocation of the right was not a bar to further interrogation as long as "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885. Therefore, a statement made by the accused during a custodial interrogation after the accused has invoked the right to counsel, is admissible in the prosecution's case in chief if 1) the accused initiates further conversation after the invocation, and 2) if the prosecution carries the burden of showing the accused subsequently waived his Fifth Amendment right to assistance of counsel. In order to show a waiver, *Edwards* stated, it "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.*

■ Here, as stated earlier, Deputy Wright ceased interrogation after Wade stated, "I think I should have an attorney." However, as he was leaving the room, he informed Wade that the case would be turned over to A.T.F. and he could talk to them. Wade then said, "Well, I'll talk to you." As discussed above, Deputy Wright's statement was not words or actions that were "reasonably likely to elicit an incriminating response from the suspect." Therefore, when Wade stated, "Well, I'll talk to you," Wade initiated further conversation after he invoked his right to counsel. Thus, the only remaining question is whether the prosecution met its burden of proving Wade waived his Fifth Amendment rights.

■ Wade is extremely familiar with the criminal justice system. In the past, he has been given the Miranda rights in connection with the investigation of crimes six to eight times. In the present case, Deputy Wright twice advised Wade of his Miranda rights shortly before Wade agreed to talk to him. Wade understood these rights and was "very

relaxed." Deputy Wright did not make any threats or promises to Wade.

This is substantial evidence which sustains the trial court's finding "that the defendant's statement was made voluntarily, knowingly, and intelligently with an understanding of his constitutional rights and after waiving the same, such statement was not obtained by means of force, threat, duress, coercion, or other illegal means and that such statement was not the product of unlawful arrest or custody."

Point denied.

## II.

In his second point on appeal, Wade claims that the "trial court erred in finding appellant guilty and in sentencing appellant for stealing, because the state failed to present substantial evidence to prove appellant's guilt beyond a reasonable doubt, in violation of the Fourteenth Amendment, and Article I, Section 10 of the Missouri Constitution, in that appellant's statement to the police was inadmissible, and the state's proof, in the absence of the inculpatory statement, did not establish appellant's guilt beyond a reasonable doubt." Because this point is dependent on the first point being successful, this point must necessarily fail.

Point denied.

## III.

Wade's final point claims that the trial court erred in instructing the jury on reasonable doubt as patterned on MAI–CR 3d 302.04. Wade did not object to the use of this instruction at trial or in his motion for new trial. Therefore, it is not preserved for appellate review and is reviewable only for plain error. *State v. Adams*, 808 S.W.2d 925, 933 (Mo.App.1991).

Wade argues that the instruction unconstitutionally defines "reasonable doubt" in contravention of due process and *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Missouri Supreme Court has repeatedly upheld this instruction, and its predecessor MAI–CR2d 2.02, as constitutionally sound. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Blanken-*

*ship*, 830 S.W.2d 1, 12 (Mo. banc 1992). We are not at liberty to overrule the last controlling decision of that court. *State v. Weems*, 800 S.W.2d 54, 58 (Mo.App.1990). There was no error, plain or otherwise.

Point denied.

The judgment is affirmed.

All concur.