**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jimmy COOK, Defendant–Appellant.**

No. 23967.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 11, 2002.

---

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Nicole E. Gorovsky, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Presiding Judge.

Jimmy Cook ("Defendant") appeals his conviction of first-degree murder and armed criminal action under §§ 565.020 and 571.015, respectively.[1] After a bench trial, the court sentenced Defendant to life imprisonment without the possibility of parole. On appeal, Defendant alleges the trial court erred in overruling his motion to suppress two inculpatory statements made to the police and admitting them into evidence over his objection. Defendant claims this violated his federal and state constitutional rights to be free from compulsory self-incrimination. We find no error. We affirm.

## STATEMENT OF FACTS

Because the sufficiency of the evidence is not challenged on appeal, only a brief summary of the underlying facts is provided.[2] *State v. Fritz*, 913 S.W.2d 941, 943 (Mo.App.1996). Defendant was married to Linda Cook ("Victim") who was his third wife. Following a tumultuous relationship resulting from Defendant's jealousy, the couple separated, and Victim began residing in Cardwell, Missouri. Defendant drove to an apartment complex where Victim was located, pulled his gun from the glove box, put it into his pocket, and asked to speak with his estranged wife. After a conversation of 30 to 45 minutes, Victim attempted to walk away, and Defendant shot her in the back. While Victim was lying on the ground, Defendant shot her two more times.

Defendant fled the scene of the crime, was ultimately apprehended in Arkansas, and was taken to a police station and interrogated. Upon being advised of his rights per *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Defendant invoked his rights, but made an incriminating statement to the police shortly thereafter. The next day, while being held in a county jail in Missouri, Defendant was once again questioned regarding the crime. Then, Defendant made another incriminating statement which was almost identical to the first. Defendant

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. Further facts are provided when necessary in discussing Defendant's allegation of error.

was formally charged with first-degree murder and armed criminal action on September 22, 1999. In exchange for the State not seeking the death penalty, Defendant waived his right to a trial by jury. Following the bench trial, Defendant was found guilty and sentenced to life imprisonment without the possibility of parole. This appeal followed.

## DISCUSSION AND DECISION

In essence, Defendant's point relied on and argument in support thereof allege the trial court erred in failing to suppress his inculpatory statements because: (1) he invoked his rights per *Miranda;* (2) he did not reinitiate contact with the police, so any statements made thereafter should have been excluded; and (3) even assuming he reinitiated contact, his statements were nevertheless involuntary due to his mental shortcomings, unfamiliarity with the criminal justice system, and "dazed" state of mind. We disagree.

■ The trial court's rulings on a motion to suppress and admittance of evidence at trial must be supported by substantial evidence. *State v. Lyons,* 951 S.W.2d 584, 588[2] (Mo.banc 1997). The evidence is viewed in the light most favorable to the ruling, disregarding contrary evidence and inferences. *State v. Davis,* 980 S.W.2d 92, 94[3] (Mo.App.1998). "Once the admissibility of a statement has been challenged, the State bears the burden of demonstrating by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently made the statement." *State v. Bucklew,* 973 S.W.2d 83, 87[1] (Mo.banc 1998).

■ Upon invoking Fifth Amendment privileges, the interrogation of an accused must cease and the right to remain silent must be scrupulously honored. *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975); *Bucklew,* 973 S.W.2d at 88[3]. Interrogation includes not only express questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

■ Once a suspect has expressed his or her desire to deal with the police only through counsel, the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him [or her], unless the accused himself [or herself] initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). Here there is no question Defendant invoked his right to counsel. Therefore, the State had the burden to show Defendant initiated further discussions with the police and voluntarily, knowingly, and intelligently waived the right he had invoked. *Oregon v. Bradshaw,* 462 U.S. 1039, 1044–46, 103 S.Ct. 2830, 2834–35, 77 L.Ed.2d 405 (1983); *Lyons,* 951 S.W.2d at 588.

■ In this appeal, it is clear Defendant reinitiated the contact with the police. Testimony from Deputy Pointer was that he read Defendant his *Miranda* rights from a pre-printed form. Defendant invoked his right to counsel, and the testimony regarding the circumstances thereafter is as follows:

"Q [by state]: Okay. Did [you] say anything to him at that point?

"A [by Pointer]: I told him I could not talk to him any longer.

"Q: And, did he say anything to you in response to that?

"A: No, sir, he did not.

"Q: What happened next?

"A: I turned to Deputy Key and spoke to Deputy Key and let him know that we could no longer talk to [Defendant] because he wanted an attorney, and, I guess, it was 20 seconds to maybe two minutes, somewhere in that neighborhood,. I don't know what the time limit was, that from, and [Defendant] stated that he would like to tell his side of the story."

Defendant asserts the police "should have known that remaining in the interview room and talking to each other about how [Defendant] asked for counsel and now they could not talk to him, would pressure [Defendant] into talking and waiving his right to counsel." [3] This is an untenable argument for which Defendant provides no authority.

 The police are not required to cut off all contact with a suspect once he or she invokes his or her rights. For instance in *Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297, the police were transporting the robbery suspect to the station when he invoked his right to counsel. The police talked to each other about the danger of the shotgun, which was missing, falling into the hands of handicapped children in the vicinity. Thereafter, the suspect told the police where the gun was located. The court held these were not words or actions the police should have known were likely to elicit an incriminating response. *Id.* at 303, 100 S.Ct. at 1691. In the case at bar, one officer told the other not to talk to Defendant any longer. "[P]olice surely cannot be held for the unforeseeable results of their words or actions." *Id.* at 301–02, 100 S.Ct. at 1690. Moreover, this is nothing more than " 'inquiries or statements . . . relating to routine incidents of the custodial relationship' " which will not "initiate" a conversation as that term is used in *Edwards*. *Lyons*, 951 S.W.2d at 590 (quoting *Bradshaw*, 462 U.S. at 1045, 103 S.Ct. at 2835). It is clear Defendant reinitiated the conversation.[4]

We turn now to the waiver of the right invoked to determine if such waiver was made voluntarily, knowingly, and intelligently. Defendant has an I.Q. of 70; was unfamiliar with the criminal justice system; attended school until the ninth grade; could not read or write very well; and was "dazed" at the time of giving the waiver.

 "The test for 'voluntariness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Lytle*, 715 S.W.2d 910, 915 (Mo.banc 1986). "The state's showing that a 'defendant was informed of his rights, that he was capable of under-

---

**3.** Defendant bases this claim on the fact he was described as dazed with a slurred speech, low intellect, and unfamiliarity in dealing with police.

**4.** One further comment must be made to the police action here regarding language in *Innis*. The court states, "Any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or ac-

tions were reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 302 n. 8, 100 S.Ct. at 1690. Defendant maintains the police knew he was "dazed" and spoke with a "slurred speech;" therefore, they should have known he was susceptible to some type of persuasion. This argument presupposes some sort of coercive activity by the police. Here, one simple comment and remaining in the room with Defendant cannot be viewed as a "form of persuasion."

standing those rights, and that no physical force, threats, promises, or coercive tactics were used to obtain the confession,' is prima facie evidence that the confession given while the defendant was in custody was voluntary." *State v. Johnson,* 988 S.W.2d 115, 120[20] (Mo.App.1999).

 Defendant was clearly informed of his rights and there is no evidence he was incapable of understanding those rights. Although his I.Q. was 70, low intelligence quotients are not necessarily indicators a suspect cannot voluntarily waive his or her rights. *See State v. Powell,* 798 S.W.2d 709 (Mo.banc 1990) (I.Q. between 65 and 83); *State v. Jacobs,* 861 S.W.2d 621, 624 (Mo.App.1993) (I.Q. at lower end of 63.5 to 78 with a second grade reading level). Moreover, Defendant's own expert testified his assessment of Defendant was "provisional" because he could not discern whether his mental infirmities resulted from reading disabilities or mathematical incapabilities. Furthermore, his expert testified Defendant was fully capable of working in occupations which were above his I.Q. level.

Defendant testified at trial, was fully able to comprehend all questions, articulated his answers, and was able to recall specific dates from previous years. From this evidence, it is reasonable to infer that Defendant's low I.Q. did not affect his ability to knowingly and intelligently waive his rights. Pointer read each right to Defendant and asked if he understood each right. Defendant responded "yes" each time. The police did not use any threats, promises, or coercive activity of any kind during this process.

 Defendant's assertion he appeared "dazed" to the police is of no avail. There is no indication this had any detrimental effect on his ability to knowingly and intelligently waive his rights. "[T]here is no constitutional right to confess 'only when totally rational and properly motivated.'" *Lyons,* 951 S.W.2d at 590 (quoting *Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Likewise, Defendant's unfamiliarity with the police is unpersuasive. " 'If one is informed of his right to remain silent under *Miranda,* and understands his right to remain silent under *Miranda,* and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent.'" *Bucklew,* 973 S.W.2d at 90[5] (quoting *State v. Skillicorn,* 944 S.W.2d 877, 890 (Mo.banc 1997)).

Given the totality of the circumstances, Defendant's statements were given voluntarily, knowingly, and intelligently. The police were careful and thorough in administering the rights and ensuring Defendant understood these rights. The trial court did not err in overruling the motion to suppress and admitting the statements into evidence at trial.[5]

 Even assuming, *arguendo,* that the police violated *Miranda* and the statement was deemed involuntary, we would still find no error in admitting the statements at trial. This follows because the motion to suppress was taken with the case, i.e., there was no separate, preliminary hearing. Defendant elected to testify on his own behalf *before* ever requesting a ruling on the motion to suppress. In es-

---

**5.** Our analysis regarding the waiver of his rights applies equally to the second statement given. Defendant waived his rights and never invoked them again before the second statement was given. At that time, Defendant was once again read his rights, and he waived

them. Also, although an attorney was attempting to contact Defendant, he never requested an attorney. *See State v. Matney,* 721 S.W.2d 189, 193 (Mo.App.1986). Any argument to the contrary is without merit.

sence, his trial testimony tracked what the statements revealed.[6] Any error in admitting the statements into evidence was non-prejudicial and harmless beyond a reasonable doubt. *See, e.g., State v. Brown,* 654 S.W.2d 290, 291[1] (Mo.App.1983); *State v. Schwendt,* 645 S.W.2d 385, 387 (Mo.App. 1983). Point denied.

The judgment of conviction and sentence is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concurs.

---

**6.** The only material inconsistency this court could find was a statement concerning the last time Defendant had fired the gun prior to shooting Victim. Defendant claimed to have been shooting at targets on the same day in an apparent attempt to explain why he had a gun with him when talking with Victim. However, Defendant's testimony revealed evidence demonstrating premeditation regardless of why he had the gun with him or when he loaded the weapon.