Jimmy COOK, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 25863.

Missouri Court of Appeals,
Southern District,
Division Two.

June 28, 2004.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A Fichter, Office of Atty. General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Jimmy Cook ("Movant") seeks post-conviction relief via a Rule 29.15 motion after he was convicted of murder in the first degree (§ 565.020) and armed criminal action (§ 571.015).[1] Movant's Rule 29.15 motion alleged, *inter alia*, that his trial counsel was constitutionally ineffective when he advised Movant to waive his right to a jury trial in exchange for the State not seeking the death penalty. After an evidentiary hearing, the motion court denied Movant's requested relief. Movant appeals. We affirm.

**FACTS**

In his direct appeal, Movant did not challenge the sufficiency of the evidence. A brief recitation of the facts of his case is garnered from the appeal in *State v. Cook,* 67 S.W.3d 718, 720–21 (Mo.App.2002). Movant was married to his third wife, Linda Cook ("Victim"), and the marriage was characterized as tumultuous, stemming from Movant's jealousy. After the couple separated, Movant went to Victim's new home to talk with her. Following a conversation lasting 30 to 45 minutes, Victim attempted to walk away. As she did so, Movant shot her in the back. While Victim was lying on the ground, Movant walked up to her, stood over her body, and shot her two more times.[2]

The State filed an information charging Movant with first-degree murder and armed criminal action. In addition, the State filed its notice of intention to seek the death penalty. As part of its filing, the State listed certain aggravating circumstances which, per sections 565.030 and 565.032, would authorize imposition of the death penalty. Specifically, the State alleged (1) Movant committed the first-degree murder for the purpose of receiving money or other monetary value from Victim (§ 565.032.2(4)), and (2) the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture or depravity of mind (§ 565.032.2(7)).

Due to the circumstances of the murder, Movant's trial counsel, Robert Wolfrum ("Wolfrum"), advised Movant to waive his right to a jury trial in exchange for the State not seeking the death penalty. After a bench trial, Movant was convicted of murder in the first degree and armed criminal action. For the murder, Movant

---

1. All statutory references are to RSMo (2000), unless otherwise indicated. All rule references are to Supreme Court Rules (2003), unless stated differently.

2. Additional facts of this murder will be recited when discussing Movant's points on appeal.

was sentenced to life imprisonment without the possibility of probation or parole to be served consecutively with a life sentence for the armed criminal action conviction.

Movant's request for post-conviction relief is based on counsel's pretrial advice that Movant should consider waiving his right to a trial by jury in exchange for the State's agreement not to seek the death penalty. First, Movant claims that counsel's advice was constitutionally defective "because there was no evidence in Movant's case of any aggravating circumstances under Section 565.032, RSMo. that would authorize imposition of the death penalty." Second, Movant argues he should not have been advised to waive his jury trial right because, as a matter of law, he was not eligible to be sentenced to death. Movant premises this second claim upon an assertion that he is "mentally retarded" and the United States Supreme Court's ruling in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), that the Eighth Amendment prohibits the execution of such individuals.

After extensive findings of fact and conclusions of law, the motion court denied Movant's Rule 29.15 motion. This appeal followed.

## STANDARD OF REVIEW

Appellate review of a denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *State v. Ervin*, 835 S.W.2d 905, 928 (Mo.banc 1992). "The ... findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* at 928[42].

To prevail on a claim of ineffective assistance of counsel, a movant must show:

First, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). The required prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

To obtain relief, a movant must prove both the performance and the prejudice prongs of the *Strickland* test, and if he or she fails to satisfy either prong, we need not consider the other and the claim must fail. *State v. Kinder*, 942 S.W.2d 313, 335[67] (Mo.banc 1996); *Neely v. State*, 117 S.W.3d 731, 735 (Mo.App.2003). "Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Kinder*, 942 S.W.2d at 335[68]. Moreover, a movant must also overcome a strong presumption that counsel's actions constituted sound trial strategy. *Id.* at 335[69]. Ultimately, review of the motion court's judgment focuses upon whether the alleged error caused the movant to suffer a genuine deprivation of his right to effective assistance of counsel, such that our confidence in the fairness of the trial is undermined. *Wolfe v. State*, 96 S.W.3d 90, 93 (Mo.banc 2003).

### Point I: Evidence Supporting Statutory Aggravating Circumstances

■ In his first point, Movant asserts the motion court clearly erred in denying relief because his trial counsel was ineffective in advising him to waive his right to a trial by jury. He argues that "[a] reason-

ably competent attorney under these circumstances would not have advised [Movant] to waive a jury trial because there was *no evidence* in [Movant's] case (*presented at trial or included in the discovery*) *of any aggravating circumstances....*" (Emphasis supplied.) Simply stated, the record shows otherwise.

■ In a first-degree murder prosecution, if the State seeks to impose the death penalty, it must give the defendant notice of such intention prior to trial and a list of the aggravating circumstances it intends to prove. § 565.005. Missouri's statutory capital punishment scheme is a four-step process: (1) the fact-finder must unanimously find at least one aggravating circumstance beyond a reasonable doubt; (2) the fact-finder must unanimously find that the evidence in aggravation of punishment warrants imposing the penalty of death; (3) the fact-finder must decide whether there is evidence in mitigation of punishment outweighing evidence in aggravation thereof; and (4) the fact-finder must decide whether to impose the death sentence in view of all the circumstances. *State v. Thompson*, 85 S.W.3d 635, 639 (Mo.banc 2002); § 565.030.4.

■ It is clear that only one aggravating circumstance is necessary to impose the death penalty. *Ervin v. State*, 80 S.W.3d 817, 826[17] (Mo.banc 2002); *State v. Taylor*, 18 S.W.3d 366, 378[22] (Mo.banc 2000). If the fact-finder finds any aggravating circumstances, it must then weigh them against the mitigating circumstances. *State v. Williams*, 97 S.W.3d 462, 470 (Mo. banc), *cert. denied*, 539 U.S. 944, 123 S.Ct. 2607, 156 L.Ed.2d 631 (2003).

One aggravating circumstance charged in Movant's case was that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind." § 565.032.2(7). To aid the fact-finder in determining whether this circumstance exists, the Missouri Approved Jury Instructions set forth ten factors. Only one of these ten factors need be present to support a finding that the murder involved a depravity of mind. MAI–CR 3d 313.40, Notes on Use 7(B) and (D) (1994). One of those factors is as follows: "[3] That the defendant killed [Victim] after [Victim] was bound or otherwise rendered helpless by defendant and that defendant thereby exhibited a callous disregard for the sanctity of all human life." Notes on Use (7)(B)[3].[3]

The evidence in this case amply shows the presence of this aggravating circumstance. Movant was pathologically jealous of Victim's contact with other males. Movant threatened and abused Victim during their marriage. After Victim moved away from Movant, he stalked her. Approximately one month before the murder, Movant purchased a handgun and began using it for target practice.

On the evening of the murder, Movant was target practicing at his brother's house. After he left his brother's house, he drove to see Victim, loading his gun on the drive. When he got to Victim's apartment complex, he retrieved his gun from the glove compartment and concealed it in his pocket. The two talked for 30 to 45 minutes.

In attempts to end the conversation, Victim tried to walk away. Movant then chambered a round in his gun and shot her in the back. Victim fell to the ground and lay there moaning in pain. After the first shot, an eyewitness described Movant's ac-

---

**3.** Other factors that may have applied to Movant's case can be found in the Notes on Use 7(B)[2] and [4].

tions as follows: "He just walked, he didn't run up there to her after she had fallen. He walked up there to her."

Then, Movant stood over Victim "for approximately five seconds or so." Victim "looked up at him over her right shoulder and then turned and put her head back down on her hand." The eyewitness described the scene as follows: "[H]e was standing over [Victim] with the gun pointed at her and he said something. He was looking right at me and he said something.... And then he shot her again right—staring right at me, he shot her."

In sum, for 30 seconds to one minute, Victim lie there helpless with Movant standing over her. Then, Movant shot Victim a third time.

The facts of the killing would amply support a finding by a jury that an aggravating circumstance existed, i.e., the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. *See, e.g., State v. Tisius,* 92 S.W.3d 751, 765 (Mo.banc), *cert. denied,* 539 U.S. 920, 123 S.Ct. 2287, 156 L.Ed.2d 140 (2002); *State v. Butler,* 951 S.W.2d 600, 606[9] (Mo.banc 1997); *State v. Newlon,* 627 S.W.2d 606, 621–22 (Mo. banc 1982), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518 (Mo.banc 1997); and cases collected in Thomas J. Fleming, Annotation, *Sufficiency of the Evidence, For Purposes of Death Penalty, to Establish Statutory Aggravating Circumstances that Murder was Heinous, Cruel, Depraved, or the Like—Post–Gregg Cases,* 63 A.L.R.4th 478, 1988 WL 546640, §§ 3a, 3c, and 15a (1988).[4] As such, the death penalty was a viable punishment that the State was entitled to pursue in Movant's case.

Movant's trial counsel, Wolfrum, was an experienced defense attorney, defending capital cases almost exclusively since 1989. Because of the facts of the case, Wolfrum testified he "could not say that as a matter of law, the death penalty was an impossibility." Consequently, Movant's argument, that counsel was ineffective in advising him to waive a jury trial *"because* there was *no evidence* in [Movant's] case *(presented at trial or included in the discovery )* of any aggravating circumstances[,]" is entirely without merit. (Emphasis supplied.) There was indeed such evidence; therefore, Wolfrum's advice, representation, and trial strategy were neither ineffective nor unreasonable. Point denied.

### Point II: Ineligibilty for Death Penalty due to Mental Retardation

■ Movant's second point maintains he received ineffective assistance of counsel for an additional reason that is also grounded in Wolfrum's pretrial advice that Movant should waive his right to a jury trial. Although Movant's argument is somewhat confusing, the following is what we discern it to be. Movant claims that he is "mentally retarded," relying on trial testimony that he has a low I.Q. and a learning disability. He then argues that the punishment of death was not an option for the State "because the United States Supreme Court has determined that execution of a mentally retarded criminal is unconstitutional under the Eighth Amendment." Because Wolfrum did not advise Movant of the alleged impossibility of capital punishment, Movant asserts that his waiver of a jury trial was "unknowing and involuntary." Movant's argument fails for numerous reasons.

4.  The annotation is specifically cited by Notes on Use 7(D) for a general discussion of the depravity of mind aggravator.

■ First, Movant presented no evidence indicating that counsel knew of Movant's alleged mental deficiency *before* advising him to waive a jury trial. Moreover, Movant's only evidence of mental retardation presented on his Rule 29.15 motion was the record of Movant's trial. The trial testimony only indicated Movant had a low I.Q., but his doctor never diagnosed him as *mentally retarded.* In fact, his doctor testified that Movant "was fully capable of working in occupations which were above his I.Q. level." *Cook,* 67 S.W.3d at 723.

We must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. We must also presume that counsel performed effectively, and Movant assumes a heavy burden in attempting to overcome this presumption. *Buckner v. State,* 35 S.W.3d 417, 421[8] (Mo.App.2000). Here, Movant neither alleged nor proved that counsel should have discovered or known that Movant was mentally retarded prior to advising him to waive a jury trial. More than that, Movant did not prove mental retardation at his criminal trial or his postconviction hearing as statutorily defined and explained by caselaw. For this reason alone, his point would fail. *See Anderson v. State,* 66 S.W.3d 770, 776 (Mo.App.2002).

■ The second reason Movant's claim must fail is that the Supreme Court's decision in *Atkins* came after Movant's trial. The Court held that execution of mentally retarded offenders violated the Eighth Amendment. *Atkins,* 536 U.S. at 321, 122 S.Ct. at 2252. *Atkins* was decided June 20, 2002, and Movant was tried and convicted in September 2000 and sentenced in November of that year. We believe it needs no citation to authority to hold that counsel cannot be deemed ineffective for failing to predict a United States Supreme Court decision occurring almost two years after Movant's case.

Although Movant recognizes the strained nature of this "prediction" argument, he claims that *Johnson v. State,* 102 S.W.3d 535 (Mo.banc 2003), supports his assertions. There, the Supreme Court of Missouri held that *Atkins* could not be used to support Johnson's claim that his trial lawyer was constitutionally ineffective for failing to present evidence of Johnson's mental retardation during the penalty phase of his case. *Id.* at 537. This resulted because *Atkins* was decided after Johnson's criminal trial. *Id.* Accordingly, Johnson could not successfully make an *ineffective assistance of counsel* claim under the post-conviction rule. Even so, the Court gave Johnson relief (a new penalty phase) because additional evidence presented at the post-conviction hearing reinforced the possibility of a mental retardation finding. *Id.* at 540–41. The Court reasoned that, if Johnson was mentally retarded within the meaning of *Atkins,* then the sentence "was in excess of the maximum authorized by law[,]" i.e., a basis for post-conviction relief under Rule 29.15. *Id.* at 537.

The *Johnson* decision does not help Movant. Movant was not sentenced to death for his crime. *Johnson* only applies when the death penalty is ordered for an individual alleged to be mentally retarded, and in a timely filed post-conviction case, the sentence is alleged to be potentially in excess of the maximum authorized by law because of his or her mental retardation. Movant was sentenced to life imprisonment without the possibility of probation or parole. There is no constitutional impediment to life without parole punishment for a mentally retarded person who has been convicted of a capital offense. Consequently, Movant's sentence is not in ex-

cess of the maximum allowed by law. Point denied.

The motion court's findings of fact and conclusions of law are not clearly erroneous. We are not left with a definite and firm impression that a mistake has been made. Moreover, our confidence in the fairness and outcome of Movant's criminal trial has not been undermined. The judgment of the motion court is affirmed.

PARRISH, and BATES, JJ., concur.

---

1. All statutory references are to RSMo. (2000)    unless indicated otherwise.