Ernest Lee **JOHNSON**, Appellant,

v.

**STATE of Missouri, Respondent.**

No. SC 84502.

Supreme Court of Missouri,
En Banc.

April 22, 2003.

---

**8.** Tax consultants, take note: you, too can share in this windfall of free money.

Rosemary E. Percival, Assistant Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Linda Lemke, Assistant Attorney General, Jefferson City, for respondent.

RONNIE L. WHITE, Judge.

## I.

Movant Ernest Lee Johnson was convicted of three counts of first-degree murder. The jury recommended a sentence of death for each of the three convictions. Movant's convictions and sentences were affirmed. He asserts that his sentence is excessive. This Court has jurisdiction.

MO. CONST. ART. V, SEC. 10. The judgment is reversed, and the case is remanded.

## II.

In 1994, Movant beat and killed three employees of a Columbia convenience store using a hammer, a screwdriver and a gun. The details of those crimes were set forth in *State v. Johnson*,[1] where this Court affirmed the convictions but reversed for a new penalty phase. In Movant's second penalty phase, the jury again awarded three death sentences; those sentences were affirmed on direct appeal in 2000.[2]

Movant now seeks review by way of Rule 29.15, arguing *inter alia* that his counsel was deficient for failing to present evidence of his mental retardation during the second penalty phase and that the sentence was excessive and in violation of his right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article I, section 21, of the Missouri Constitution.

## III.

Because Movant's direct appeals are exhausted in Missouri, he seeks review under Rule 29.15. Specifically, Movant asserts that the motion court clearly erred in denying him an evidentiary hearing in light of substantial evidence of mental retardation in violation of section 565.030.4[3] and the recent United States Supreme Court decision, *Atkins v. Virginia*, which held

that "death is not a suitable punishment for a mentally retarded criminal."[4] Section 565.030.4 applies only to crimes committed after August 28, 2001;[5] *Atkins* was decided less than a year ago. Therefore, neither the statute nor *Atkins* governed at the time of Movant's trials.

Nevertheless, under Rule 29.15, Movant has stated a basis for post-conviction relief. Rule 29.15 not only provides for ineffective assistance of counsel, but also, important to this case, Rule 29.15 applies to a person claiming that the sentence imposed violates the state or federal constitution or that the sentence was in excess of the maximum authorized by law.[6] The essence of Movant's arguments is that, because of mental incapacity, the death sentences violate the Missouri and federal constitutions and are in excess of the maximum sentence authorized by law. Indeed, as will be explained below, under *Atkins*, Missouri cannot execute a person who is mentally deficient. Movant has shown that ample evidence was available but not sufficiently presented establishing that his mental capacity is questionable.

## IV.

Under Rule 29.15(k), appellate review is limited to "whether the findings and conclusions of the motion court are clearly erroneous." A motion court's "findings and conclusions are clearly erroneous if, after a review of the entire record, the Court is left with the definite and ·

1. 968 S.W.2d 686 (Mo. banc 1998).

2. *State v. Johnson*, 22 S.W.3d 183 (Mo. banc 2000).

3. All statutory references are to RSMo Supp. 2002, unless indicated otherwise.

4. 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

5. Section 565.030.7.

6. *See, e.g., Thurston v. State*, 791 S.W.2d 893, 896–98 (Mo.App.1990) (accused subjected to maximum punishment simply for exercising constitutional right to jury trial correctly asserted sentence was excessive under Rule 29.15).

firm impression that a mistake has been made."[7]

## V.

Movant was evaluated separately by three mental health experts for the defense before trial: Drs. Carole Bernard, Dennis Cowan and Robert Smith. Only Cowan and Smith testified at trial, though Bernard's testimony best supported Movant's mental retardation theory. The three experts' testimony is summarized below.

Bernard, a psychologist with considerable experience in mental retardation, examined Movant two times for a total of eight hours. At a deposition (but not at trial), Bernard testified that she concluded that Movant's full-scale Intelligence Quotient (IQ) score was under 75 or around 70 (she did not have all of her notes at the deposition). An IQ score of 70–80 is considered borderline mentally retarded; an IQ of 55–70 reflects mild mental retardation. According to Bernard, an IQ score is reliable within a 10–point spread, so a score of 71 might reflect an accurate IQ of anything from 67 to 76.

Bernard also reviewed Movant's childhood and early adulthood records in evaluating Movant's mental ability. She noted that when Movant was in the third grade, his IQ score was 77. While that score was "subaverage," Bernard testified that it was not "too bad" for that age. When he was in the sixth grade, Movant's score was 63. The sixth grade score was more telling, according to Bernard, because most children at that age have an increased score or stay roughly in the same area. In her opinion, the 14–point decrease was significant. Bernard concluded that Movant's ability to process and retain information

and perhaps some of his adaptive skills interfered to create the lower score.

According to Bernard, Movant's poor intelligence indicators continued into early adulthood. In the ninth grade, Movant had terrible grades, failing or borderline failing every subject except physical education. Bernard testified that poor grades can be indicative of mental retardation.

In addition to poor intelligence indicators, Bernard also found that Movant had defective adaptive skills. Adaptive skills manifest before the age of 18 and include skills in communication, self-care, social life, social and interpersonal development, self direction, and use of community resources. Bernard reviewed Movant's records and noted evidence of deficient adaptive skills that manifested before the age of 18 in that Movant was developmentally delayed as a student; he was slow to walk; he was slow to talk; numerous reports showed that he could not make friends and had poor social skills; he could not make up his mind and was "easily led." When Movant was 18 years old, he was tested by prison officials while incarcerated for unrelated crimes; those tests indicated that Movant was developmentally delayed in verbal skills such as communication and reading. For all of the adaptive skills evaluated by the prison, Movant fell below normal.

Bernard testified that as an adult, Movant continued to demonstrate poor adaptive skills. Specifically, he did not know to use community resources in that he spent most of his life out of prison unemployed but not on a vocational track, even though he signed a contract at the prison that he would attend a vocational school. Bernard also testified that Movant had deficient self-care skills in that he could not live alone and never had—he had

---

7.  *Middleton v. State,* 80 S.W.3d 799, 804 (Mo.      banc 2002).

always lived with a cousin, girlfriend, or someone else. Also, Bernard testified that Movant had poor awareness of social mores—for example, he did not think anyone should pay taxes, and he did not know why people get a marriage license. Bernard also determined that Movant's vocabulary was "sparse" and that he could not complete a test meant for a person with a sixth-grade reading level.

In short, Bernard concluded that Movant had a history of deficient adaptive skills, noting that his "mental abilities are enough below average that coupled with adaptive skills, which are poor in several areas, that he was unable even as a grown man to function normally in society."[8]

Cowan, a psychologist who practices neuropsychology,[9] examined Movant and reviewed his educational records. Cowan administered a number of tests on Movant, measuring areas such as: lateral dominance (which hemisphere of the brain is dominant), motor functioning, sensory perception, tactual performance, language abilities, and learning disabilities. Based on those tests, Cowan determined that Movant was brain damaged to a mild degree of impairment. According to Cowan, the brain dysfunction was due to two childhood head injuries and drug abuse.

Cowan also testified that Movant's full-scale IQ was 84, which is in the low-average range, that his performance IQ was 86 (dull-normal range) and that his verbal IQ was 83 (low-average range).[10] Like Bernard, Cowan also reviewed Movant's IQ tests from childhood and explained that the higher scores were a result of a different type of test—in other words, based on the tests administered to Movant both as a child and an adult, Cowan concluded that it was normal for Movant to score lower as a child than he did as an adult.

Smith is a clinical psychologist.[11] He conducted extensive research into Movant's family history, childhood, fetal alcohol syndrome, etc. He did not conduct his own IQ tests but testified as to Bernard's results and agreed that Cowan's were feasible as well.

## VI.

■■■ The question this Court addresses is whether the sentence is excessive in light of the evidence of Movant's decreased mental capacity. Taken together, the United States Supreme Court's *Atkins* case,[12] the General Assembly's enactment of a statute prohibiting the death penalty for mentally retarded individuals, and the contradictory evidence of Appellant's mental abilities, this case requires remand.

8. Bernard was never contacted by the attorneys who represented Movant in his penalty phase retrial. She stated in her deposition that she would have been willing, ready, and available to testify.

9. Neuropsychology is the study of brain-related behavior; testing determines how well a person's brain is functioning.

10. A witness for the State, Dr. Jerome C. Peters testified that Movant's full-scale IQ is 84. Peters testified also that because the test used to determine Movant's IQ is "culturally prejudiced against him," Movant's IQ is approximately 3 to 6 points higher than 84.

11. A clinical psychologist studies human behavior and is trained to diagnose and treat different types of mental disorders and substance abuse.

12. *Atkins* applies to Movant's cause. *See Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (holding that a new rule placing a certain class of individuals beyond the state's power to punish by death—including the mentally retarded—is retroactive, applying to cases on collateral review).

In *Atkins,* the Supreme Court noted a trend among the states of consideration of a person's mental capacity in determining punishment.[13] The Court noted that as a national consensus, "our society views mentally retarded offenders as categorically less culpable than the average criminal." Although the Court did not determine that the mentally retarded are exempt from criminal punishment altogether, it held that it is cruel and unusual to inflict the death penalty on those with diminished mental capacity and therefore diminished culpability.[14]

*Atkins* recognized also that no national consensus exists among the states as to a determination of which offenders are mentally retarded. Accordingly, *Atkins* did not define the perimeters of mental retardation, but left "to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences."[15]

Given that the Supreme Court left the definition of "mental retardation" to the states, this Court looks to Missouri's statute for guidance. Section 565.030.6 defines "mental retardation" or "mentally retarded" as:

a condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive

related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.[16]

■   As noted above, Missouri's statute was to apply only to crimes committed after August 28, 2001. Nonetheless, in light of *Atkins,* this Court holds as a bright-line test that a defendant that can prove mental retardation by a preponderance of the evidence, as set out in section 565.030.6, shall not be subject to the death penalty.

As applied to this case, the evidence shows that reasonable minds could differ as to Movant's mental abilities.[17] Some evidence of a deficient mental capacity was presented at trial; Cowan testified Movant's full-scale IQ was 84, that his performance IQ was 86 and that his verbal IQ was 83. Smith, who did not conduct independent IQ tests, mentioned Bernard's results and testified that Cowan's results were feasible as well. The defense did not, however, present Bernard to testify. At deposition, she indicated that Movant's IQ was as low as 70, reflecting mild mental retardation.

13. Part of the "trend" noted by the *Atkins* Court was state statutes preventing execution of the mentally ill. Missouri's section 565.030.4 was included in that list.

14. 536 U.S. at 315, 122 S.Ct. 2242.

15. 536 U.S. at 317, 122 S.Ct. 2242.

16. That definition is similar to the ones set out in note 3 of *Atkins,* quoting the American Association of Mental Retardation and the American Psychiatric Association. Bernard's working use of the term "mental retardation" was in line with that definition as well.

17. *See, e.g., Murphy v. Oklahoma,* 54 P.3d 556, 557, 567 n. 17 (Okla.Crim.App.2002) (though post-conviction relief petitioner's "mild mental retardation" was borderline and downplayed by his own expert, remand was necessary in light of death penalty sentence and *Atkins*); *Ohio v. Lott,* 97 Ohio St.3d 303, 779 N.E.2d 1011, 1013–15 (2002) (contradictory evidence of mental retardation necessitated remand under *Atkins*); *People v. Pulliam,* 2002 WL 31341298, 176 Ill.2d 261, ——, 223 Ill.Dec. 610, 680 N.E.2d 343, 2002 Ill. LEXIS 947, at *61 (2002) (same); *State v. Dunn,* 831 So.2d 862, 880–83 (La.2002) (same).

Bernard also testified extensively about Movant's defective adaptive skills, such as communication, self-care, social life, social and interpersonal development, self direction, and use of community resources. Importantly, these adaptive skills are considered in the determination of mental retardation under section 565.030.6. In short, evidence not offered at the penalty phase could put Movant squarely within the realm of mental retardation under section 565.030.6. His IQ is as low as 70, and he has severe limitations in adaptive behaviors. These qualities manifested before the age of 18.

Further, at the trial, evidence of mental retardation was presented and the jury was instructed to consider it, but the jury was not faced with the *Atkins* pronouncement: "death is not a suitable punishment for a mentally retarded criminal." [18] Rather, the jury instructions treated mental retardation as a mere mitigating circumstance—not the outright bar to punishment dictated by *Atkins*. Once evidence of mental retardation is presented, a fact finder must make a determination under MAI–CR3d 313.38, which was incorporated in light of *Atkins*.

This Court is not holding that all sentenced to death are entitled now to a hearing determining whether they are mentally retarded. Movant, rather, was able to articulate specific facts indicating his mental deficiency, given that he has a long history of significantly subaverage intellectual functioning and poor adaptive skills. The *Atkins* rule was not presented to the jury, nor was testimony indicating his possible retardation. For these reasons, the motion court clearly erred in not setting aside his current sentence for being excessive.

### VII.

The evidence necessary in light of *Atkins* was not presented adequately to a finder of fact, nor was the constitutional right to be free from the death penalty where mental retardation exists. Because it is cruel and unusual to inflict the death penalty on those who are mentally retarded, because incomplete evidence of Movant's mental capacity was presented, and because Movant's mental capabilities are questionable, the cause is reversed and the case is remanded. On remand, the court shall set aside Movant's sentence and order a new penalty phase hearing.

All concur.

---

**18.** 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335.