IN THE INDIANA SUPREME COURT

ALLEN, Howard,
 petitioner,
 v.

STATE OF INDIANA,
 respondent.
)
)
)
)
)
)
Supreme Court case no.
49S00-0303-SD-122

Marion Superior Court case no.
CR87-194C

 ORDER CONCERNING SUCCESSIVE PETITION
 FOR POST-CONVICTION RELIEF IN CAPITAL CASE

 Petitioner, Howard Allen, by counsel, seeks permission to litigate
one additional post-conviction claim relating to his death sentence. He
alleges that he is a mentally retarded person whose execution is prohibited
by Atkins v. Virginia, 536 U.S. 304, 321 (2002). We conclude that Allen
has already litigated this claim, and therefore deny permission for him to
litigate the issue a second time.

 Allen has filed a “Tender of Successive Petition for Post-Conviction
Relief (Capital Case)” and tendered a successive “Petition for Post-
Conviction Relief.” Respondent, State of Indiana, was permitted to file an
“Opposition to Tender of Successive Petition for Post-Conviction Relief.”
The Court has jurisdiction because Allen has been sentenced to death. See
Ind. Appellate Rule 4(A)(1)(a).

 Background of this case. Allen was charged with the July 14, 1987
murder, felony-murder, and robbery of Ernestine Griffen. A jury found him
guilty on all counts, and the murder and felony-murder convictions were
merged. The State sought the death penalty, alleging the aggravating
circumstance of an intentional killing during a robbery. See Ind. Code §
35-50-2-9(b)(1). The Marion Superior Court followed the jury’s unanimous
recommendation and sentenced Allen to death. See I.C. § 35-50-2-9(e)
(Supp. 1987). Before considering the merits of Allen’s direct appeal, we
remanded the case with instructions for the trial court to produce a
written sentencing order, to apply certain stricter standards for
sentencing in capital cases, and to consider affidavits Allen had submitted
on his claim that he was mentally retarded. See Allen, 686 N.E.2d at 787-
88, & n.32. Thereafter, the trial court entered a written order sentencing
Allen to death.

 The convictions and sentence were affirmed on direct appeal in Allen
v. State, 686 N.E.2d 760, 765 (Ind. 1997), cert. denied 525 U.S. 1073
(1999). The judgment denying relief in collateral post-conviction
proceedings was affirmed on appeal in Allen v. State, 749 N.E.2d 1158, 1163
(Ind. 2001), cert. denied 535 U.S. 1061 (2002). Allen has also filed a
petition for writ of habeas corpus in a federal district court, which
remains pending. See Howard Allen v. Cecil Davis, case no. IP-01-1658-C-
T/K (S.D. Ind.).

 Post-Conviction Rule 1, Section 12. The Court’s rules permit a
person convicted of a crime in an Indiana state court to challenge the
conviction and sentence collaterally in a post-conviction proceeding. See
Ind. Post-Conviction Rule 1. As indicated above, Allen has already availed
himself of that procedure.

 Post-Conviction Rule 1, Section 12 specifies the procedure for
requesting a second, or “successive” collateral review. The rule states:

 (b) The court will authorize the filing of the petition if the
 petitioner establishes a reasonable possibility that the petitioner is
 entitled to post-conviction relief. In making this determination, the
 court may consider applicable law, the petition, and materials from
 the petitioner’s prior appellate and post-conviction proceedings
 including the record, briefs and court decisions, and any other
 material the court deems relevant.

 We have considered the materials from Allen’s prior appeals, the
materials submitted in connection with the successive petition, and
applicable law.

 Atkins v. Virginia. The United States Supreme Court has declared
that execution of a mentally retarded person is an “excessive” sanction
that violates the Eighth Amendment to the United States Constitution. 536
U.S. at 321. Mentally retarded persons are regarded as less culpable,
Atkins says, because they have

 diminished capacities to understand and process information, to
 communicate, to abstract from mistakes and learn from experience, to
 engage in logical reasoning, to control impulses, and to understand
 the reactions of others . . . . [T]here is abundant evidence that
 they often act on impulse rather than pursuant to a premeditated plan,
 and that in group settings they are followers rather than leaders.

Id. at 318 (footnotes omitted).

 Atkins cited definitions of mental retardation from the American
Association of Mental Retardation and the American Psychiatric Association.
 See 536 U.S. at 308 n.3. Although not identically worded, the two
definitions require significantly subaverage intellectual functioning and
limitations in adaptive skills, both of which manifest before the person
reaches eighteen years of age. Still, Atkins informs that “[n]ot all
people who claim to be mentally retarded will be so impaired as to fall
within the range of mentally retarded offenders about whom there is a
national consensus” against executing. Id. at 317.

 We assume the Atkins proscription against execution of mentally
retarded persons applies retroactively to Allen’s death sentence. See
Penry v. Lynaugh, 492 U.S. 302, 330 (1989) (indicating that if the Supreme
Court were to hold that the Eighth Amendment prohibits the execution of
mentally retarded persons “such a rule would fall under the first exception
to the general rule of non-retroactivity and would be applicable to
defendants on collateral review.”). We have applied Atkins retroactively
in another case. See Gamba Rastafari v. State, No. 45S00-0210-SD-510,
unpublished order, (Ind. Feb. 5, 2003) (allowing prisoner to file
successive post-conviction petition and litigate issue of whether he is
mentally retarded pursuant to Atkins).

 Although Indiana has enacted legislation barring execution of
mentally retarded persons, we held in Allen’s direct appeal that the law
did not apply to him because he was tried before the law’s effective date.
See Allen v. State, 686 N.E.2d at 786. At that time, there was no
constitutional mandate for a rule exempting mentally retarded individuals
from the death penalty, see id., therefore Allen’s claim under Atkins
remains.

 The successive claim. Allen’s successive post-conviction petition
alleges that he is a mentally retarded person whose execution is prohibited
under Atkins and that he is entitled to litigate this claim in a state
trial court. The State responds, in part, that Allen has already litigated
whether he is mentally retarded and is not entitled to another opportunity.

 Evidence of Allen’s mental capacity was considered by the trial
court after we remanded the case, on direct appeal, for a written
sentencing order. Our remand order directed the trial court to consider
evidence of Allen’s mental capacity and authorized the court to grant any
appropriate relief contemplated by the Indiana Trial Rule 59, which governs
motions to correct error. See 686 N.E.2d at 787-88, & n.32.

 Evidence presented to the trial court supporting Allen’s claim that
he is mentally retarded included the following. In 1956, at the
chronological age of seven years, nine months, Allen’s Intelligence
Quotient (“I.Q.”) was scored as seventy on the Revised Stanford Binet
Intelligence Scale, which indicated a mental age of five years and five
months. Supplemental Trial Record, p. 20 (Psychological Report). In
1959, at the chronological age of ten years and nine months, his I.Q. was
scored as 68, which indicated a mental age of seven years and four months.
Id. at 21. An I.Q. of 70 or below is an indication of significantly
subaverage intellectual functioning. Supp. T. R., p. 28 (affidavit of
Richard B. Dever, Ph.D.).

 Dr. Dever opined that there were “many indications [in the records he
reviewed] that Howard Allen manifested significant deficits in adaptive
behavior during the developmental period of his life . . . .” Id. at 29.
These deficits included “significant academic retardation,” and an
“inability to function appropriately within the context of the social
requirements imposed on people his age by the community,” when Allen was
not in the structured environment of prison. Id. at 29-30.

 Allen was enrolled in special education classes for mentally retarded
children, and when he left elementary school at the age of twelve years and
eight months, he was reading at the second grade level. Supp. T.R., p. 15
(Affidavit of Mary Jo Dare, a director of special education). Ms. Dare
opined that Allen “had difficulty processing language” as a child, that his
“thinking and decision-making would be very concrete,” and that he “could
have difficulty understanding the consequences of his conduct and could be
easily led.” Id. at 18.

 Other evidence, however, tended to show that Allen is not mentally
retarded. Allen’s I.Q. was scored as 104 on a test used by the Department
of Correction for assessing prisoners. See 686 N.E.2d at 790 & n.34.
Allen’s mother testified that he was an “average” student. See id. at 790
n.35. None of Allen’s family members described him as anything other than
of normal intelligence. See id. at 790. None of the eighteen people who
submitted letters on Allen’s behalf before sentencing indicated he was not
of normal intelligence. See id. Allen was a “solo-acting criminal.” See
id. The trial court observed that Allen made an “articulate” statement at
the sentencing hearing. See Supp. T.R., p. 81 (trial court’s sentencing
order); T.R., p. 3135-47 (Allen’s statement).

 Allen argued to the trial court that he was mentally retarded and
that this should be considered as a mitigating circumstance weighing
against a death sentence. See I.C. § 35-50-2-9(c) & (e). In rejecting
Allen’s argument, the trial court commented on the weight of the evidence,
and concluded:

 The information contained in the affidavits . . . tend to show a
 mitigating factor, but is a very slight mitigating factor. The Court
 gives it little weight in light of evidence in the record that
 Defendant was examined and evaluated by two court-appointed
 psychiatrists in 1975 who reported that he was well oriented and had
 the capacity to understand his behavior. The pre-sentence report
 filed in [a prior case in which Allen had been convicted] states that
 Howard Allen had an I.Q. of 104. The pre-sentence report filed in
 this case reiterated the orientation-and-capacity-to-understand-his-
 behavior-and-I.Q.-of-104 statements. At one point during the
 proceedings a motion for psychiatric examination of defendant was
 filed, but the motion was withdrawn in open court with the Defendant’s
 oral agreement after discussion of the matter with counsel.
 No witness called by Defendant at his sentencing mentioned any
 possibility of mental retardation. . . . None [of the letters
 written on Allen’s behalf] mentioned any possibility of mental
 retardation.
 Moreover, the Court’s own observation of the Defendant and the
 articulate statement he gave on his behalf at the sentencing hearing
 further erodes whatever weight the Court gives to this mitigating
 circumstance.”

Supp. T. R., p. 80-82 (sentencing order).

 In the direct appeal, we rejected Allen’s argument that the trial
court had failed to give adequate consideration to the evidence of mental
retardation, and we deferred to the trial court’s judgment about the weight
to be given the evidence:

 Judge Barney devoted more than half of his four-page [sentencing]
 order to weighing the evidence averred by Mary Jo Dare and Dr. Richard
 Dever, experts who submitted affidavits supporting Allen’s claim of
 retardation. He found it controverted by other evidence in the
 record, which reduces the issue to one of credibility. The trial
 court’s judgment about the credibility and weight of evidence is part
 and parcel of its statutory balancing function. This Court will not
 second-guess the trial court on questions of credibility or weighing.

686 N.E.2d at 788-89 (rejecting argument that trial court failed to weigh
aggravators and mitigators properly). We concluded:

 There is little evidence that Allen is mentally retarded, and none
 that shows him to be incapable of appreciating the criminality of his
 conduct or to conform it to the law. At sentencing, Allen's colloquy
 with the trial judge amply demonstrated that he was mentally present
 and that he understood the proceedings. As a result, the trial
 court's balance of the statutory aggravator against the scant evidence
 in mitigation and the court's due consideration of the jury's
 recommendation are reasonable in fact and supportable in law. We
 conclude that the aggravating circumstance outweighs the mitigating
 circumstance and that the penalty is appropriate to the offense and
 the offender.

Id. at 790-91.

 We acknowledge that the issue of Allen’s mental capacity was
presented to the trial court in the context of whether mental retardation,
if established, was a mitigating circumstance sufficient to outweigh the
death-eligible aggravating circumstance of an intentional killing in the
course of a robbery. At the time, this balancing process was the procedure
for factoring a convicted person’s mental retardation into the capital
sentencing decision. See I.C. § 35-50-2-9(c) & (e); Allen, 686 N.E.2d at
790.

 Atkins held that a person shown to be mentally retarded cannot be
executed. That is, when Atkins is applied to Indiana’s sentencing scheme,
the mitigating circumstance of mental retardation necessarily outweighs any
death-eligible aggravating circumstance.

 However, the factual inquiry under either analysis is the same: is
the person mentally retarded? In Allen’s case, the trial court’s
sentencing order acknowledged the existence of some evidence that Allen was
mentally retarded, but ultimately, found that he was not. When the trial
court’s order stated that the evidence tended “to show . . . a very slight
mitigating factor,” and that other evidence “erodes whatever weight the
Court gives to this mitigating circumstance,” we conclude the trial court
meant that Allen had not proved to the court’s satisfaction that Allen was
actually mentally retarded.

 One other point is worth mention. In the first post-conviction
conviction proceeding, Allen asserted that he had been misdiagnosed as
mentally retarded. See, e.g., Brief of Petitioner-Appellant, p. 41
(Allen “likely would not have been misdiagnosed as mentally retarded” if
his attorney had had more time and resources); see also Reply Brief of
Petitioner-Appellant, p. 8. In rejecting Allen’s attempt to re-cast the
claim of mental retardation as a “thought disorder” and a “severe learning
disability” similar to mental retardation, we reiterated our conclusion
that the trial court had sufficiently considered the evidence of mental
retardation. See Allen, 749 N.E.2d at 1174-75. We also decided the trial
court’s determination was res judicata on the issue. Id. at 1175.

 We have previously decided that the trial court adequately considered
the evidence of mental retardation. See 686 N.E.2d at 790-91 (on direct
appeal); 749 N.E.2d at 1175 (on appeal from denial of post-conviction
relief). We have also rejected Allen’s various claims that he was deprived
of his right to effective assistance of counsel with respect to this issue.
 See 686 N.E.2d at 779, 781 (on direct appeal); 749 N.E.2d at 1176 (on
appeal from denial of post-conviction relief). We now conclude that the
record shows that Allen has had a full and fair opportunity to litigate the
issue of whether he is mentally retarded, and that, faced with conflicting
evidence, the trial court resolved the issue against Allen.

 “The doctrine of res judicata prevents the repetitious litigation of
that which is essentially the same dispute.” Ben-Yisrayl v. State, 738
N.E.2d 253, 258 (Ind. 2000). We conclude that Allen has already litigated,
and lost, his claim that he is mentally retarded. Therefore, the claim is
res judicata and is not available to Allen in a successive post-conviction
proceeding. See, e.g., Wrinkles v. State, 776 N.E.2d 905, 908 (Ind. 2002)
(denying permission to file successive petition when claim is res
judicata).

 Having not established a reasonable possibility that he is entitled
to post-conviction relief on this claim, Allen’s request for leave to file
a successive post-conviction relief petition is DENIED.

 The Clerk is directed to send a copy of this order to the Marion
Superior Court; to the Public Defender of Indiana; to the Attorney General
of Indiana; to Paula Sites, the Public Defender Council; to Rebecca
McClure, the Prosecutor’s Council; and to counsel of record.

 DONE AT INDIANAPOLIS INDIANA, this 15th day of July, 2003.

 /s/ Randall T. Shepard
 Chief Justice of Indiana

Shepard, C.J., and Dickson and Sullivan, JJ., concur.
Boehm, J., dissents with opinion, in which Rucker, J., concurs.

BOEHM, J., dissenting

 Last year, in Atkins v. Virginia, 536 U.S. 304 (2002) the Supreme
Court made clear that the Eighth Amendment prohibits execution of the
mentally retarded. Allen now claims that he is mentally retarded as that
term is used in Eighth Amendment jurisprudence. It seems clear that the
precise meaning of that term is yet to be fleshed out, but Allen points to
opinion that he is “mentally retarded” as one expert would define the term
and to data from his early school years, including I.Q. tests of 68 and 70
at an early age. This evidence was offered in a 1996 hearing in which
mental retardation was offered as a mitigating factor to be considered
under Indiana state law in Allen’s sentencing.

 Application of Atkins is yet to be worked out by the courts of this
state, but it seems to me that the Eighth Amendment presents us with a
binary decision: either Allen is or is not mentally retarded. The trial
court in its 1996 sentencing proceeding was confronted with a balancing of
mitigating factors against aggravating factors. One of the factors Allen
argued as mitigating was his claimed mental retardation. The Court today
concludes that the trial court found that Allen was not mentally retarded.
I cannot reach that conclusion with any confidence. The trial court’s
observations are quoted by the Court at length. It seems to me the
operative finding is the trial court’s statement that the offered pieces of
evidence “tend to show a mitigating factor but is [sic] a very slight
mitigating factor.”. The trial court’s findings on this point are not
entirely clear but they seem to me to mean either 1) Allen’s mental
retardation was relatively slight compared to other mentally retarded
persons, or 2) other factors render it entitled to little weight in a state
court balancing of aggravating and mitigating factors or 3) both. Under
any of these three alternatives, the trial court findings do not
constitute an adjudication of the Eighth Amendment issue Allen presents.
Finally, the trial court did not elaborate its understanding of the
criteria for mental retardation as a state law mitigating factor. As a
result, even if we took the trial court to find no mental retardation,
which I do not, we could not be confident that the trial court’s finding on
this point meets Eighth Amendment standards.
In short, both the sentencing judge and the factfinder in a pre-Atkins
regime were confronted with different considerations in evaluating mental
retardation as a mitigating circumstance as opposed to a complete bar to
execution. Accordingly, their conclusions do not resolve the issues Allen
now raises. See Johnson v. State, 102 S.W.3d 535 (Mo. 2003); State v.
Grell, 66 P.2d 1234, 1240 (Ariz. 2003); State v. Lott, 779 N.E.2d 1001,
1015 (Ohio 2002). For that reason, I respectfully dissent from the denial
of leave to permit Allen to litigate that issue in light of Atkins.