BALES, Justice,
concurring in part and dissenting in part.
¶70 Based on the Supreme Court’s decisions in Atkins and Cooper, I do not believe that the federal constitution allows states to execute defendants who are more likely than not mentally retarded but who cannot prove their retardation by the higher standard of clear and convincing evidence. Accordingly, I respectfully dissent from my colleagues’ decision to uphold the clear and convincing standard contained in A.R.S. § 13-703.02(G).
¶ 71 “[Djeath is not a suitable punishment for a mentally retarded criminal.” Atkins, 536 U.S. at 321, 122 S.Ct. 2242. Although Atkins allows states to develop appropriate ways to enforce this constitutional restriction, id. at 317, 122 S.Ct. 2242, the procedures adopted must themselves pass constitutional muster. Cooper outlines the proper framework for determining if a statutorily-assigned standard of proof on the issue of mental retardation comports with due process.
¶72 The majority recognizes that, while the right not to be executed if mentally retarded is of “recent vintage,” both this right (Atkins) and the right not to stand trial if incompetent (Cooper) are “constitutional right[s] based on modern consensus and historical views” of the issues. Op. ¶ 32; accord Pruitt v. State, 834 N.E.2d 90, 100-03 (Ind. 2005) (noting that the Supreme Court has identified the right of mentally retarded defendants not to be executed as grounded in a fundamental principle of justice). I agree with the majority that, just as states may place on defendants the burden of proving competency, states may place on defendants the burden of proving mental retardation. Op. ¶ 29.
¶ 73 My disagreement with the majority concerns the standard, rather than the burden, of proof. In arguing for a clear and convincing standard, the majority notes that there are “significant differences” between the right of the incompetent not to be tried and the right of the retarded not to be executed. Id. ¶38. Noting differences in these constitutional rights does not itself justify requiring defendants to prove retardation by the higher standard of proof; nor does it substitute for actually applying the Cooper analysis. Moreover, the difference between a defendant who might be executed if a court incorrectly rejects a claim of mental retardation and an incompetent defendant who might erroneously be subjected to a trial does not support imposing a higher standard on the former as compared to the latter.
¶ 74 Nor can the majority justify a higher standard of proof by comparing the rights of *531 the retarded and the mentally insane. Id. ¶ 40. The standard of proof arguably should be higher for eve-of-execution claims of insanity by defendants who were competent to be tried and sentenced to death as compared to defendants who claim to be mentally retarded, a permanent condition which must be established by evidence of onset before age eighteen. Cf. Ford v. Wainwright, 477 U.S. 399, 426, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Powell, J., concurring) (noting state may presume defendant remains sane and require defendant to make substantial threshold showing to obtain hearing on post-sentencing claim of insanity). Moreover, since Cooper, neither the Supreme Court nor this court has addressed whether a state can, consistent with the constitution, execute a person who is more likely than not insane. Thus, the fact that Arizona statutes require defendants to establish mental incompetence (i.e., insanity) by clear and convincing evidence as a bar to execution, see A.R.S. § 13-4022(F), does not resolve whether the higher standard can constitutionally apply to that issue or to the issue of mental retardation.[13]
¶ 75 Our legislature enacted A.R.S. § 13-703.02 before Atkins held that executing a mentally retarded defendant violates the Eighth Amendment’s prohibition against cruel and unusual punishment, 536 U.S. at 316, 321, 122 S.Ct. 2242. Thus, A.R.S. § 13-703.02 does not reflect a legislative effort to adopt a statute in light of the constitutional prohibition. Since Atkins, as the majority acknowledges, all but one of those states that have set the standard of proof for proving mental retardation have adopted a preponderance standard. Op. ¶ 32.
¶ 76 The majority, however, discounts the significance of the standard of proof by arguing that, because Arizona’s statutes provide for a pretrial determination of mental retardation, “the defendant’s risk ... is not death, but a capital trial.” Id. ¶ 35. The majority further states that the ability of defendants to present mental retardation evidence as mitigation during the sentencing hearing reduces “the ultimate risk they face from an adverse determination” under the clear and convincing standard for the pretrial hearing. Id.
¶ 77 The flaw in this analysis is that the pretrial hearing under A.R.S. § 13-703.02 is the defendant’s only opportunity to secure his constitutional rights under Atkins. See id. ¶ 48 (“The judge hears mental retardation evidence as a legal bar to execution and the jury hears it for mitigation purposes.”); cf. id. ¶ 31 (recognizing that the competency hearing provides “those defendants’ only opportunity to contest competency”). Under our statutes, the jury does not decide the Atkins issue when it makes its sentencing determination. See id. ¶48. Instead, each juror makes his or her own decision whether the defendant has proven any mitigating facts and how such facts should be valued. A.R.S. § 13-703(C); State ex rel. Thomas v. Granville, 211 Ariz. 468, 471 ¶ 12 n. 3, 123 P.3d 662, 665 n. 3 (2005).[14]
*532 ¶ 78 Mitigation does not go to the constitutional issue in Atkins. Even before Atkins, a defendant could argue mental retardation as relevant mitigation evidence. Penny v. Lynaugh, 492 U.S. 302, 319-20, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (holding that, although the constitution did not prohibit execution of mentally retarded defendants, the defendant must be allowed to present mental retardation as mitigation evidence); see also A.R.S. § 13-703(G). Atkins, however, made clear that the ability to argue mitigation is not sufficient to avoid the constitutional issue as “[m]entally retarded defendants in the aggregate face a special risk of wrongful execution.” 536 U.S. at 321, 122 S.Ct. 2242 (abrogating Penny, 492 U.S. at 323-25, 109 S.Ct. 2934).[15]
¶ 79 Although one or more jurors may find that the defendant has proven mental retardation by a preponderance of the evidence, the jurors remain free to decide that such evidence is not sufficiently substantial to call for leniency and to impose a death sentence. See A.R.S. § 13-703(0); Granville, 211 Ariz. at 471 ¶ 12 n. 3, 123 P.3d at 665 n. 3. Indeed, as the Supreme Court noted in Atkins, reliance on mental retardation as a mitigating factor can be a “two-edged sword” because the jury may consider the same evidence as supporting the imposition of a death sentence. 536 U.S. at 321, 122 S.Ct. 2242 (noting that mental retardation may enhance likelihood of finding of aggravating factor of future dangerousness). We cannot uphold a clear and convincing standard by relying on the very process the Atkins court determined was insufficient to protect the constitutional rights of the mentally retarded.
¶ 80 In addition, the majority reasons that a clear and convincing standard is constitutional because Atkins recognized that, while there is national consensus against executing the mentally retarded, “people may disagree over which individuals in fact have mental retardation.” Op. ¶ 37. States must protect those defendants who fall within the national consensus on mental retardation, but “are otherwise free to craft their laws for determining which defendants meet the consensus standard.” Id. But the fact that the Court has afforded states some flexibility in substantively defining mental retardation in no way answers whether states may constitutionally execute those defendants who prove they are more likely than not retarded under any applicable definition.
¶ 81 The majority attempts to argue that A.R.S. § 13-703.02 protects those defendants who fall within the national consensus by providing them with “a comparatively lower bar” while requiring defendants with higher IQ scores to “go to greater lengths to prove their mental retardation.” Id. This argument mistakenly assumes the “national consensus” embraces only defendants whose IQs are 65 or below and it fails to recognize how the statute actually works even as to those defendants. Although A.R.S. § 13-703.02 creates a rebuttable presumption of mental retardation for defendants whose IQ scores are 65 or below, this presumption shifts only the burden of production, not the burden of persuasion, to the State. State v. Arellano, — Ariz. -, - ¶¶ 11-12, -, P.3d -,-, 2006 WL 1412884 (2006). Once the State has come forth with any evidence to rebut the presumption, the defendant still must prove mental retardation by clear and convincing evidence, regardless of IQ scores.
¶ 82 Additionally, the majority dismisses the “special risk of wrongful execution” faced by mentally retarded defendants by stating “it does not suggest the need for any particular procedure to ascertain mental retardation.” Op. ¶36. The majority asserts that the clear and convincing standard will assure that “defendants about whom there is a consensus against execution will be screened out at the pretrial stage”; other defendants do not “face such a severe risk at sentencing that they may not constitutionally be put through the capital trial process.” Id.
¶ 83 The right of the mentally retarded not to be executed, however, is not limited to *533 those defendants who are severely retarded or who otherwise can establish their condition by especially compelling evidence.[16] Under Atkins, the Eighth Amendment prohibits the execution of all mentally retarded defendants. See id. ¶ 37 (“[T]he Court in Atkins clearly announced that states may not execute the mentally retarded____”). Defendants who can prove their mental retardation by only a preponderance will not be “screened out”; as a result, they still face the same special risk that, according to Atkins, cannot be remedied during mitigation. 536 U.S. at 320-21, 122 S.Ct. 2242.
¶ 84 Thus, the real issue here, which the majority does not directly confront, is whether the State can constitutionally execute those defendants who prove they are more likely than not mentally retarded but cannot meet the clear and convincing standard under A.R.S. § 13-703.02(G).
¶ 85 The Supreme Court in Cooper applied due process principles to assess a state’s imposing a clear and convincing standard of proof on a criminal defendant. Although Cooper dealt with the constitutional right not to stand trial if incompetent, its framework applies in evaluating the standard of proof on mental retardation. See Pruitt, 834 N.E.2d at 100-03 (applying Cooper to mental retardation issue); State v. Williams, 831 So.2d 835, 859-60 (La.2002) (same); Howell v. State, 151 S.W.3d 450, 463-65 (Tenn.2004) (same); see also Bowling v. Commonwealth, 163 S.W.3d 361, 382 (Ky.2005) (citing Cooper and applying preponderance of the evidence standard as “[w]e have applied ... to a defendant’s burden to prove ineompeteney to stand trial”).
¶ 86 In Cooper, the Court noted that historic and contemporary standards support a fundamental right not to stand trial if incompetent; in Atkins, the Court recognized a similar right not to be executed if mentally retarded. Op. ¶ 32. The Cooper court also noted that most jurisdictions required a preponderance of the evidence or less to show ineompeteney; similarly, most jurisdictions require only a preponderance of the evidence for a showing of mental retardation. Id. & n. 7.
¶ 87 Given the constitutional right at issue, the Court in Cooper weighed the respective interests of the state and the defendant to assess the fundamental fairness of requiring the defendant to prove ineompeteney by clear and convincing evidence. 517 U.S. at 362-67, 116 S.Ct. 1373. “The function of a standard of proof ... is to instruct the fact-finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions____” Id. at 362, 116 S.Ct. 1373 (quotation marks and citation omitted). “The more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision.” Id. (quotation marks and citation omitted).
¶ 88 The Cooper court determined that the “consequences of an erroneous determination of competence are dire” for the defendant because he would not be able to communicate with his attorney or exercise other fundamental rights involved in a fair trial. Id. at 364, 116 S.Ct. 1373. In contrast, the injury to the state from an erroneous conclusion that a defendant is incompetent when he in fact is malingering is “modest.” Id. at 365, 116 S.Ct. 1373. The state may incur expense and delay, but such errors are subject to correction in subsequent proceedings and the state may detain the defendant for a reasonable time to determine if he might later become competent. Id. Recognizing that there were important state interests at stake, the Court concluded that, where incompetence is shown by a preponderance of the evidence, “the defendant’s fundamental right to be tried only while competent outweighs the [sjtate’s interest in the efficient operation of its criminal justice system.” Id. at 367, 116 S.Ct. 1373.
¶ 89 Applying Cooper’s weighing of interests framework here, the use of a clear and convincing evidence standard “would signifi *534 cantly increase the risk of an erroneous determination” of no mental retardation for defendants who can prove they are more likely than not mentally retarded. Williams, 831 So.2d at 860 (citing Cooper, 517 U.S. at 362-63, 116 S.Ct. 1373). The imposition of the death penalty is serious and permanent; any mistake cannot be undone once the punishment is carried out. See Evans v. State, 389 Md. 456, 886 A.2d 562, 584 (2005) (“Reflected throughout the Supreme Court jurisprudence underlying the Eighth Amendment is the principle that death is different.”).
¶ 90 The State’s interest, in contrast, is at best modest, likely even less than the interest involved in Cooper. See Howell, 151 S.W.3d at 465 (“[Tjhe risk to the petitioner of an erroneous outcome is dire, as he would face the death penalty, while the risk to the State is comparatively modest.”) (citing Cooper, 517 U.S. at 364-65, 116 S.Ct. 1373). At oral argument, counsel for the State candidly acknowledged that the State does not have any “particular interest” in executing those defendants who can establish their mental retardation by a preponderance but not by clear and convincing evidence. To be sure, the State does have an interest in preventing malingering defendants from obtaining erroneous determinations of their mental retardation. But such determinations do not, in contrast to the competency determinations involved in Cooper, prevent the State from concluding criminal proceedings against the defendant; they instead limit the ultimate punishment the State can exact. Additionally, the risks of malingering are reduced because the statutory definition of mental retardation requires proof not only of a low IQ but also significantly impaired adaptive behavior and the onset of such conditions before the age of eighteen. A.R.S. § 13-703.02(E)(2).
¶ 91 When the relative risks are death and a lesser available punishment, “the defendant’s right not to be executed if mentally retarded outweighs the state’s interest as a matter of federal constitutional law.” Pruitt, 834 N.E.2d at 103; accord Williams, 831 So.2d at 860 (“Clearly, in the Atkins context, the State may bear the consequences of an erroneous determination that the defendant is mentally retarded (life imprisonment at hard labor) far more readily than the defendant of an erroneous determination that he is not mentally retarded.”); Howell, 151 S.W.3d at 465 (“The balance, under these circumstances, weighs in favor of the petitioner and justifies applying a preponderance of evidence standard at the hearing.”).
¶ 92 In light of the interests involved, I would hold that the clear and convincing standard of proof under A.R.S. § 13-703.02(G) is unconstitutional because the State cannot, consistent with due process, execute those defendants who show they are more likely than not mentally retarded. Thus, on remand, the trial court should consider whether Grell can establish mental retardation by a preponderance of the evidence before the court conducts further sentencing proceedings before a jury. I otherwise concur in the majority’s opinion.

. The majority notes that the Georgia Supreme Court has upheld a standard of proof beyond a reasonable doubt for defendants claiming to be mentally retarded. Op. ¶ 34 n. 9. The Georgia statutory scheme, which allows a verdict of "guilty but mentally retarded” in felony cases, substantially differs from Arizona’s capital sentencing scheme, as the majority acknowledges. Id. Moreover, the Georgia decisions are not persuasive on the issue presented here. In Head v. Hill, 277 Ga. 255, 587 S.E.2d 613, 621 (2003), the court reasoned that if a defendant may be required to prove insanity beyond a reasonable doubt, see Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), then requiring proof of mental retardation beyond a reasonable doubt is also constitutional. This reasoning, however, fails to recognize that, under Atkins, the mentally retarded have a constitutional right not to be executed. Whether the State may assign to the defendant a higher standard for proving non-constitutional defenses at trial does not address whether the State can execute defendants who prove they are more likely than not mentally retarded.

. Cf. Johnson v. State, 102 S.W.3d 535, 541 (Mo.2003) ("[Tjhe jury was not .faced with the Atkins pronouncement: 'death is not a suitable punishment for a mentally retarded criminal.’ Rather, the jury instructions treated mental retardation as a mere mitigating circumstance — ■ not the outright bar to punishment dictated by Atkins.")-, Kristen F. Grunewald, Case Notes, Atkins v. Virginia, 122 S.Ct. 2242, 15 Cap. Def. J. 117, 125 (2002) ("In Atkins, mental retardation acts as a bar to death. In mitigation, mental retardation is a reason to show mercy.").

. This court recognized the substantial difference between considering mental retardation as a possible mitigating factor and treating it as an absolute bar to the death penalty when the court remanded this case for reconsideration in light of Atkins after the trial judge had rejected Grell’s claim of mental retardation as a mitigating factor. See State v. Grell, 205 Ariz. 57, 63, ¶¶ 37-40, 66 P.3d 1234, 1240 (2003).

. Indeed, the defendant in Atkins claimed to be "mildly mentally retarded," 536 U.S. at 308, 122 S.Ct. 2242, and our statute includes mildly mentally retarded defendants, A.R.S. § 13-703.02(K)(4). See also Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. 2242 (noting that "mild” mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70) (citing Diagnostic and Statistical Manual of Mental Disorders 42-43 (4th ed.2000)).