**In the Matter of the COMPETENCY OF Steven PARKUS.**

No. SC 88077.

Supreme Court of Missouri, En Banc.

April 17, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for Appellant.

Sean D. O'Brien, Nancy A. McKerrow, C. Daniel Gibson, Jefferson City, for Respondent.

Mary S. Tansey, Jefferson City, for Amicus Curiae Department of Mental Health.

## PER CURIAM.[1]

### Introduction

In 2001, the state of Missouri by statute determined that death is not a suitable punishment for a mentally retarded criminal. *Section 565.030.*[2] That section was made applicable only to offenses occurring after August 28, 2001. *Id.* The following year the Supreme Court of the United States agreed that under the Eighth Amendment to the Constitution death is not a suitable punishment for a mentally retarded criminal. *Atkins v. Virginia,* 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). This Court determined that *Atkins* required that all offenders subject to execution who can articulate specific facts showing mental retardation within the definition contained in section 565.030 be given the benefit of that decision.

*Johnson v. State,* 102 S.W.3d 535, 540 (Mo. banc 2003).

Steven Parkus alleged, and the trial court found, that he is mentally retarded under section 565.030. Applying the standard of review set out in *Murphy v. Carron,*[3] this Court affirms the trial court's determination. Because Parkus is mentally retarded, the state may not execute him. This Court will recall its mandate in *State v. Parkus,* 753 S.W.2d 881 (Mo. banc 1988), set aside Parkus' sentence of death, and resentence Parkus to life imprisonment without eligibility for probation, parole, or release except by act of the governor. *State v. Whitfield,* 107 S.W.3d 253 (Mo. banc 2003).[4]

### The underlying crime and prior appeals

Steven Parkus killed a fellow inmate at the Missouri state penitentiary. He was convicted of first degree murder and sentenced to death. This Court affirmed that judgment on direct appeal, *State v. Parkus,* 753 S.W.2d 881 (Mo. banc 1988), and affirmed the judgment denying post-conviction relief, *Parkus v. State,* 781 S.W.2d 545 (Mo. banc 1989). Thereafter, Parkus sought relief in various federal courts—all to no avail.

In 1999, Missouri's governor issued an executive order staying Parkus' execution until a final determination could be made regarding whether Parkus had a mental disease or defect that would exclude him from execution. The circuit court of Washington County began an inquiry into

---

1. The Court of Appeals, Eastern District, transferred this case after an opinion authored by the Honorable Clifford H. Ahrens. *Mo. Const. article V, section 11.* Parts of that opinion are incorporated without further attribution.

2. All references to section 565.030 are to RSMo Supp.2002. All other statutory references are to RSMo 2000.

3. 536 S.W.2d 30, 32 (Mo. banc 1976).

4. Because of the procedural difficulties in this case, the proper procedure to raise a claim of mental retardation in cases such as this will be discussed later in this opinion.

Parkus' mental fitness for execution, and the court issued orders permitting physicians to evaluate Parkus.

### Procedural history of this action

Parkus subsequently filed a motion to recall this Court's mandate in *State v. Parkus* and an alternative petition for writ of habeas corpus. This Court noted the pendency of the action in Washington County. It then treated Parkus' filings as a petition for a writ of mandamus to decide Parkus' mental fitness for execution (which had been pending without decision since 2000) and ordered the circuit court also to finally determine whether Parkus had a mental disease or defect pursuant to section 552.060 and whether Parkus had mental retardation excluding him from fitness for execution pursuant to section 565.030.

The circuit court bifurcated the hearings on the issues of whether Parkus was competent to be executed and whether he was mentally retarded. The circuit court subsequently issued its order and judgment finding that Parkus was mentally retarded, and therefore it would be cruel and unusual punishment to inflict the death penalty upon him. The court stated that Parkus should be resentenced to life imprisonment without the possibility of probation, parole, or release, except by act of the governor. The state now appeals.

### The nature of the proceedings below

As noted, the proceedings below began as an action under section 552.060 to determine Parkus' competency to be executed. This Court then ordered the trial court to determine also whether Parkus was mentally retarded. This Court did not direct the trial court how to make that determination or require that the actions be combined in one action.

The trial court initially combined the proceedings. Parkus, supported by the department of mental health, sought to separate the proceedings. The trial court could then consider Parkus' mental competency to be executed under the statutory requirements of section 552.060, and the parties involved in that proceeding, and determine whether Parkus was mentally retarded, with somewhat different parties, in a separate proceeding. Parkus also noted the different review that might be accorded to each determination, with no review available on the decision on Parkus' competency to be executed. Noting the different findings that would be necessary, the different parties, and the different review, the trial court ordered bifurcated proceedings.

### The trial court could bifurcate the proceedings

The state contends the judgment is not final because the trial court did not determine Parkus' mental competency to be executed, but only determined that Parkus was mentally retarded. Rule 66.02 grants the trial court broad authority to order separate trials.

At the court's discretion, separate trials may be ordered for reasons of convenience, to avoid prejudice, or for reasons of judicial economy. Any decision to grant a separate trial will not be disturbed unless this discretion is abused. Judicial discretion will be found to be abused only when the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice. In this case, in light of the different issues being considered by the trial court, there was no abuse of discretion in separating the trials. *State ex rel. Sago By and Through Sago v. O'Brien*, 827 S.W.2d 754, 755 (Mo.App.1992).

### This is a civil—not criminal—case, and the state can appeal

Parkus challenges the state's right to appeal. The state has a more limited

right to appeal in criminal cases, and Parkus asserts this is a criminal case. He is incorrect. In this case the only determination to be made by the trial court was whether Parkus was mentally retarded. The trial court's decision on that issue would not result in greater punishment or deprive Parkus of additional liberty.

As with habeas corpus and proceedings under Rules 24.035 and 29.15, this action, at most, is a collateral attack on the judgment in the criminal case. Habeas corpus and post-conviction proceedings are civil actions. *Rule 91.01; Rule 24.035; Rule 29.15.* Similarly, suits under the probate code involving the mental fitness of a person are civil matters. *Section 472.141.* For the same reasons, this action is a civil action.

■ The right to appeal should be liberally construed as appeals are favored in the law. If doubt exists as to the right of appeal, it should be resolved in favor of that right. *Schroff v. Smart,* 120 S.W.3d 751, 755 (Mo.App.2003). Because this action is a civil action, the state, as a party to the action, is permitted to appeal any adverse decision. *Section 512.020.*

### The proper procedure for claims post-*Atkins*

■ This case was unduly complicated by the lack of a clear procedure. Parkus had received a death sentence prior to *Atkins* and *Johnson.* Parkus was unsure of his relief and sought both a recall of the mandate and habeas corpus. This Court, instead, issued a writ of mandamus because the original claim in Washington County as to Parkus' mental competency to be executed had not been adjudicated.

*Atkins* and *Johnson* preclude imposition of the death sentence if the defendant is mentally retarded. *Johnson* permits review of the defendant's mental retardation claim if the defendant is able to articulate specific facts indicating his mental deficiency. This review is limited to those defendants who received a death sentence for an offense occurring prior to August 28, 2001 (the effective date of section 565.030) and asserting a claim of mental retardation.[5]

The defendant shall file a petition for writ of mandamus in this Court. *State ex rel. Nixon v. Daugherty,* 186 S.W.3d 253, 254 (Mo. banc 2006).[6] The respondents shall be the director of the department of corrections[7] and the attorney general.[8] The defendant shall state specific facts indicating his mental retardation as defined in section 565.030.6. If factual issues are in dispute, the Court will appoint a master. If the Court determines the defendant is mentally retarded as defined in section 565.030.6, it will make peremptory its alternative writ of mandamus, recall its mandate in the direct appeal, and resentence the defendant to life imprisonment without eligibility for probation, parole, or release except by act of the governor. *Whitfield* at 272.

### Standard of review of the trial court's decision in this case

■ The attorney general notes the absence of a clear standard of review for the trial court's decision. In this case, the

---

5. The appropriate procedure to apply to cases arising after that date where the issue is not otherwise preserved is not before the Court at this time.

6. The state has a clear legal duty not to execute a person who is mentally retarded.

7. Executions are under the supervision and direction of the director of the department of corrections. *Section 546.730.*

8. The attorney general is responsible for filing a motion to set execution date in this Court.

trial court proceeded to determine the issue of mental retardation and declared the legal effect of its finding. This is a court-tried case without a jury in a civil matter. Under such circumstances, the proper standard of review is set out in *Murphy v. Carron*.[9] Great deference must be given to the trial court's resolution of conflicts in evidence, and this Court gives due regard to the court's opportunity to have judged the credibility of the witnesses before it. *Allee v. Ruby Scott Sigears Estate*, 182 S.W.3d 772, 776 (Mo.App.2006).

### The trial court's judgment did not resentence Parkus

The trial court found that Parkus was mentally retarded and included in its judgment that Parkus "should be re-sentenced to life imprisonment." However, the judgment does not purport to resentence Parkus and does not attempt to affect the judgment of this Court in *State v. Parkus*. The language is mere surplusage and is not a basis to convict the trial court of reversible error.

### The record supports the finding that Parkus is mentally retarded

■ As noted by the state, the trial court refers to the borderline nature of Parkus' mental retardation. In its judgment, the court determines that Parkus is mentally retarded. As noted by Parkus, in context, the court did not determine that Parkus had "borderline mental retardation," but found that Parkus was mentally retarded, although it was a close question.

There is significant evidence in the record to support the determination that Parkus is mentally retarded. Under section 565.030.6:

"mental retardation" or "mentally retarded" refer to a condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

The trial court noted Parkus' numerous examinations from age 8 to age 17. Conclusions of mental retardation are included in examinations at ages 8, 10 (2 reports), 11, 13, 15, and 17. The trial court also found limited adaptive behaviors documented at ages 8 (2 reports), 10 (2 reports), 13 (3 reports), and 15 (2 reports), including limitations in social skills, self-direction, functional academics, health and safety, and home living. Although there is conflicting evidence, the trial court noted that Parkus' evidence had superior evidentiary weight. This Court cannot say that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence. The trial court did not erroneously declare or apply the law.

### Conclusion

The trial court's judgment that Steven Parkus is mentally retarded is affirmed. The Court will recall its mandate in *State v. Parkus*, 753 S.W.2d 881 (Mo. banc 1988), set aside Parkus' sentence of death, and resentence Parkus to life imprisonment without eligibility for probation, parole, or

---

9. The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

release except by act of the governor. *State v. Whitfield.*[10]

All concur.

---

**10.** Because of the Court's disposition of this case, all motions still pending are overruled.